IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RAFAEL PAGAN-MONTES; MIGUEL BARRETO-HERNANDEZ<br>Plaintiffs<br>vs<br>JOSE FIGUEROA-SANCHEZ, individually and in his official capacity; KATHERINE SANTIAGO, individually and in her official capacity; EMANUEL OLIVERAS, individually and in his official capacity; ERIC PAMIAS, individually and in his official capacity; TAMARA TORRES, individually and in her official capacity; LUIS A. FELICIANO, individually and in his official capacity; ONE UNKNOWN MUNICIPAL POLICE OFFICER, individually and in his official capacity; THREE UNKNOWN MUNICIPALITY OF VEGA ALTA OFFICERS, individually and in their official capacities; MUNICIPALITY OF VEGA ALTA<br>Defendants | CIVIL 13-1698CCC |

**OPINION AND ORDER**

Plaintiffs Rafael Pagán-Montes ("Pagán") and Miguel Barreto-Hernández ("Barreto") brought this damages action under 42 U.S.C. § 1983, the Fourth, Sixth and Fourteenth Amendments to the U.S. Constitution and the Commonwealth's tort statute seeking redress for an alleged illegal arrest, search, incarceration and abusive treatment imputed to various local police officers. Included as defendants were the former Puerto Rico Police Superintendent, José Figueroa-Sancha, Puerto Rico Police Officers Catherine Santiago ("Santiago"), Manuel Oliveras ("Oliveras"), Eric Pamias ("Pamias"), Tamara Torres ("Torres") and Luis A. Feliciano ("Feliciano"), four unknown

CIVIL 13-1698CCC                              2

Vega Alta municipal police officers, and the Municipality of Vega Alta. During the course of the litigation, the claims brought against Police Superintendent Figueroa-Sancha, the Municipality of Vega Alta, and the four unknown Vega Alta municipal police officers were dismissed (see D.E. 33 and D.E. 35). The remaining defendants, the five Puerto Rico Police Officers, moved for summary judgment on September 29, 2014 (**D.E. 19**), which plaintiffs failed to oppose despite an extended opportunity to do so (see D.E. 22, D.E. 23, D.E. 26 and D.E. 32). The summary judgment motion is based on the five defendants' assertion that they had probable cause to arrest, search and temporarily detain the two plaintiffs since their physical characteristics and the registration number of the vehicle they were driving matched the information provided by a complainant on the perpetrators of an attempted theft of a motorcycle.

**I.    THE FACTS**

The relevant uncontested facts, taken from defendants' Statement of Uncontested Material Facts (D.E. 19-1) which plaintiffs failed to controvert, follow:

Plaintiff Pagán is a resident of Manatí, Puerto Rico, and during the relevant period worked for the Police of Puerto Rico as a criminal investigation agent. Plaintiff Barreto, a resident of Vega Baja, Puerto Rico, also worked for the Police of Puerto Rico as a criminal investigation agent. However, on the day of the events narrated in the complaint, he had been placed on suspension. The five remaining defendants are all police officers of the Commonwealth of Puerto Rico and also residents of Puerto Rico.

CIVIL 13-1698CCC                                3

In the early morning hours of September 28, 2012,[1] both plaintiffs were working providing private security services for the Puerto Rico Telephone Company ("PRTC"). As part of their job, they were patrolling an assigned route in roads number 175, 686, 160, 688 and 690 traveling in a white Ford-150 van, registration number 772-484, belonging to the PRTC. That same night, a complaint was lodged by a citizen who alleged that three persons wearing clothing similar to that of the two plaintiffs and riding in a white 4-door F-150 van with license plate 772-484 had attempted to steal a motorcycle from the balcony of his residence. Defendants Santiago, Oliveras, Torres and Feliciano, while on duty as Puerto Rico police officers, stopped the vehicle in which the plaintiffs were traveling on Road 690 and requested from them the vehicle registration certificate. Plaintiffs admitted during their depositions that, while these four defendants were carrying their firearms during the intervention, they did not point their firearms at them. Plaintiffs were then informed the reason for the police detention. Specifically, agent Torres informed them that some persons were accusing them of having attempted to steal a motorcycle. Plaintiff Pagán admitted during his deposition that he did not feel abused during the intervention. Both were summoned by defendant Torres to appear for further investigation at the police headquarters in Vega Alta on September 29, 2012 at 8:00 PM.

---

[1] The complaint, and both plaintiffs in their depositions, stated that the incident took place on September 29, 2012, but all the documentary evidence on record (including the written Miranda warnings provided to the two plaintiffs, the receipt of the firearm seized from Pagán, the reports on the plaintiffs' incarceration, the Police's Incident Report, the summons issued to the two plaintiffs and the inventory list on the items seized) is dated September 28, 2012. Thus, the reference by the plaintiffs to September 29, 2012 appears to be a mistake, and we use instead the date of September 28, 2012 which is corroborated by the written records. In any event, whether the incident took place on the 28th or the 29th is immaterial to the disposition of the Motion for Summary Judgment.

CIVIL 13-1698CCC                                   4

      Notwithstanding the date and time stated in the summons, plaintiffs voluntarily went to the Vega Alta police headquarters shortly after they were stopped in Road 690 and there saw the complainant being interviewed by defendants.  At the station, defendants Santiago and Torres read them the Miranda rights, Pagán was disarmed, and both plaintiffs were placed under arrest.  As stated by plaintiffs during their depositions, none of them were touched by the defendants during their arrest and, following their arrest, they were searched by defendant Oliveras who checked their pockets and took away their wallets, cellphones and shoelaces.  They were subsequently placed in a single holding cell by defendants Torres and Oliveras, although plaintiff Barreto was later moved to a cell at the Vega Alta municipal headquarters.  Plaintiffs remained detained more than nineteen hours, until almost midnight.

      Since a citizen's complaint for attempted motorcycle robbery was made presumptively  against the plaintiffs, the Criminal Investigation Bureau (CIC acronym in Spanish) and the Office of Special Investigation (NIE, acronym in Spanish) conducted a criminal investigation related to said offense.  As part of these investigations, plaintiffs' clothings and the F-150 van they were using that night were seized.  Complainant had described in his written statement that one of the three alleged robbers was wearing a red shirt, and that all three had hats and black jackets.  In their depositions, Pagán stated that he was wearing a black hat and a black shirt, while Barreto described a wine-colored hat and a wine-colored jacket that he wore.  The case was consulted with prosecutor Diana Avilés-González, but no  formal criminal charges were filed in court against the plaintiffs.

      By plaintiffs' own account of the events, Santiago, Oliveras, Torres and Feliciano were the four defendants who intervened with them initially during the

CIVIL 13-1698CCC                           5

stop on Road 690.  Once at the police station, Santiago and Torres arrested them, Oliveras frisked them and both Oliveras and Torres placed them in the holding cell.  Defendant Feliciano had no involvement in their arrest, frisk and placement in the cell.  As for defendant Pamias, he was not present during the intervention on Road 690 and, once at the station, he neither directly intervened with plaintiffs nor spoke with them.

## II.     THE SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986) (internal quotation marks omitted).

## III.    THE CLAIMS UNDER THE FOURTH AMENDMENT

Plaintiffs aver that they were illegally arrested, searched and seized in violation of the Fourth Amendment.  It is firmly established that if defendants "had probable cause there could be no section 1983 action premised on an illegal arrest." Earle v. Benoit, 850 F.2d 836, 849 (1st Cir. 1988).  "Probable cause to arrest exists if, at the moment of the arrest, the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense."  Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1st Cir. 1996).  "Probable cause requires only a probability that the defendant committed the crime."  Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009).  Here, the undisputed facts clearly establish

CIVIL 13-1698CCC                              6

that defendants had probable cause to arrest the two plaintiffs for the commission of a felony: at the time a complaint had been lodged by a citizen claiming that three persons had attempted to steal his motorcycle and both the clothing worn by the putative robbers and the license plate of the vehicle which they were driving matched the clothes and the vehicle of the plaintiffs. Hence, plaintiffs' claim for illegal arrest fails.

As to the claimed illegal search, also in violation of the Fourth Amendment, the Supreme Court has held that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that amendment." United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467 (1973). "Thus, under Robinson, if the arrest was lawful, a searching officer does not need to have any further justification for performing a full body search of an arrestee." Swain v. Spinney, 117 F.3d 1, 5-6 (1st Cir. 1997). Of course, not all possible searches of an arrestee's body are automatically permissible as a search incident to arrest; any such search must still be reasonable. Swain v. Spinney, 117 F.3d 1, 6 (1st Cir. 1997). But the facts here do not suggest that the search conducted incidental to plaintiffs' arrest was unreasonable, as they did not describe it in their depositions as having any "extreme or patently abusive characteristics." Robinson, 414 U.S. at 236, 94 S.Ct. at 477 (citing Rochin v. California, 342 U.S. 165, 72 S.Ct. 205 (1952)). Simply put, their pockets were searched and defendant Oliveras took away their wallets, cellphones and shoelaces. There was no illegal search under the Fourth Amendment either.

Plaintiffs also assert that defendants violated their Fourth Amendment rights by detaining them for more than nineteen hours before being released

CIVIL 13-1698CCC                                             7

without any criminal charges being filed.  These allegations do not make out a constitutional violation either. The Supreme Court has made clear that, after a warrantless arrest, a suspect may be detained prior to appearing before an issuing authority "for a brief period of detention to take the administrative steps incident to arrest." <u>Gerstein v. Pugh</u>, 420 U.S. 103, 113-14, 95 S.Ct. 854 (1975). Absent proof that the probable cause determination was delayed unreasonably, a probable cause determination within forty-eight hours of arrest is sufficient to comply with the Fourth Amendment.  <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 56, 111 S.Ct. 1661 (1991). Here, the undisputed facts reveal that the criminal allegations against plaintiffs were investigated by two different divisions (the CIC and the NIE) and consulted with a prosecutor within nineteen hours of their arrest – well within the forty-eight hour period established by the Supreme Court.  Therefore, plaintiffs have also failed to establish a constitutional violation for illegal seizure under the Fourth Amendment.

    Accordingly, plaintiffs' claims under the Fourth Amendment are DISMISSED.

**IV.    THE CLAIM UNDER THE SIXTH AMENDMENT**

Plaintiffs aver in their complaint that they were not informed of the nature and cause of the accusation against them in violation of the Sixth Amendment. While the Sixth Amendment "requires that the defendant be informed of the nature and cause of the accusation," <u>United States v. Calderon</u>, 77 F.3d 6, 9 (1st Cir. 1996), this protection does not come into play until the government has committed itself to prosecution.   See  <u>Moran v. Burbine</u>, 475 U.S. 412, 462-63, 106 S.Ct. 1135 (1986); <u>United States ex rel. Hall v. Lane</u>, 804 F.2d 79, 82 (7th Cir. 1986).  Clearly, the Commonwealth was still not

CIVIL 13-1698CCC                                      8

committed to prosecuting plaintiffs during the period in which they remained in custody, as no charges against them had been filed. Indeed, none were ever filed. Therefore, no right ever attached to plaintiffs under the Sixth Amendment to be informed of the reason for their arrest, which is reason enough to DISMISS their claim under said provision.

**V.      THE CLAIM UNDER THE FOURTEENTH AMENDMENT**

Plaintiffs' claim under the Fourteenth Amendment, insofar as it is but an invocation of their rights under the Fourth and Sixth Amendment made applicable to the Commonwealth of Puerto Rico under the Fourteenth Amendment (see Complaint, ¶ 19; In Re Winship, 397 U.S. 358, 382, n. 11 (1970) (". . . since the adoption of the Fourteenth Amendment this Court has held almost all the provisions of the Bill of Rights applicable to the States"), fails for the reasons explained above. Were plaintiffs attempting to bring an independent claim under the Due Process Clause of the Fourteenth Amendment, their effort is also vapid. For one, it is settled law that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." National Aeronautics and Space Admin. v. Nelson, 562 U.S. 134, 162 (2011). Thus, to the extent plaintiffs' due process claim is also being based upon defendants' alleged burdening of their Fourth and Sixth Amendment rights, it has already been disposed of by our determination that those Amendments were not infringed. Moreover, any independent claim of a substantive due process violation based on the instances of abusive police

CIVIL 13-1698CCC								9

conduct alleged in the Complaint[2] fails for those factual allegations have been completely crumbled by the summary judgment record.  Accordingly, plaintiffs' claim under the Fourteenth Amendment is also DISMISSED.

## VI.  QUALIFIED IMMUNITY

Defendants have also asserted that they are entitled to qualified immunity.  We need not address this request, however, since "[t]he summary judgment in defendants' favor moots the qualified immunity issue." Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 23 (1st Cir. 2014).

## VII.  SUPPLEMENTAL CLAIM

The Court has dismissed all of plaintiffs' federal claims.  There being no remaining federal claims to support supplemental jurisdiction (nor any claim of diversity jurisdiction), we decline to exercise said supplemental jurisdiction over the tort claim under Article 1802 of Puerto Rico's Civil Code which  is also DISMISSED, without prejudice, for lack of subject matter jurisdiction. See Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 192 (1st Cir. 1999).

## VIII.  CONCLUSION

For the reasons stated above, the Motion for Summary Judgment filed by defendants  Catherine Santiago, Manuel Oliveras, Eric Pamias, Tamara Torres and Luis A. Feliciano (**D.E. 19**) is GRANTED.  Accordingly, plaintiffs' claims brought under the Fourth, Sixth and Fourteenth Amendments are

---

[2]Plaintiffs alleged in the Complaint, among other things, that "[d]efendants approached and encircled [them] in the van vehicle with guns in their hands and in open view," "[d]efendants in a hostile and abusive manner requested the certificate of vehicle registration," they "underwent abusive treatment," and "were exposed against their will to public view and were publicly humiliated and embarrassed."  Complaint, ¶¶ 10, 12 and 13.

CIVIL 13-1698CCC                              10

DISMISSED with prejudice, and their claim under Puerto Rico's Article 1802 is DISMISSED, without prejudice.  Judgment shall be entered accordingly.

SO ORDERED.

At San Juan, Puerto Rico, on August 13, 2015.

                                        S/CARMEN CONSUELO CEREZO
                                        United States District Judge